## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AMBROSIO ROUSE, Ph.D.,** )<br>)<br>Plaintiff, )<br>)<br>**v.** )<br>) 2:06-cv-566<br>**II-VI, INCORPORATED, BRUCE** )<br>**GLICK, individually, CSABA SZELES,** )<br>**individually, KERRY COURTNEY,** )<br>**individually, X, Y, and Z, individually,** )<br>)<br>Defendants. )<br>) | |

## MEMORANDUM OPINION AND ORDER

March 30, 2007

Presently before the Court in this employment discrimination case are the following:

- Defendants' MOTION TO DISMISS and brief in support thereof (Doc. Nos. 7 and 8)
- Plaintiff's OPPOSITION AND BRIEF IN SUPPORT OF HIS OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (Doc. No. 14)
- Defendant's REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS (Doc. No. 15)
- Plaintiff's SURREPLY BRIEF TO DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS (Doc. No. 18)
- Plaintiff's MOTION FOR RULE 11 SANCTIONS and brief in support thereof (Doc. Nos. 16 and 17).
- Defendant's RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS and brief in support thereof (Doc. Nos. 19 and 20)
- Plaintiff's REPLY BRIEF IN SUPPORT OF HIS MOTION FOR SANCTIONS (Doc. 22)

For the reasons hereinafter set forth the Court will grant Defendants' motion to dismiss (1) on

counts 9, 10, 15, and 16 of the complaint with respect to all defendants, (2) on counts 1, 2, 5, and 6

with respect to all discriminatory conduct alleged to have occurred before October 2, 2003, or 300

days before the administrative charge was filed, and (3) on counts 1, 2, 5, and 6 with respect the

1

individual defendants.  The Court will deny Defendants' motion with respect to all other counts.

Plaintiff's motion for Rule 11 sanctions will be denied.

## BACKGROUND

Plaintiff is an African American male formerly employed by Defendant II-VI, Incorporated

("II-VI"), a manufacturing company located in Saxonburg, Pa. (Compl. ¶ 11).  II-VI hired Plaintiff

on January 31, 2000 and terminated his employment on May 19, 2004. (Compl. ¶ 27-28, 62).  At

the time of his dismissal, he was 43 years old.  (EEOC Discrimination Charge, Ex. A to

Defendant's Brief in Support of Motion to Dismiss ("Def. Brief")).[1]  Plaintiff alleges that

Defendants discriminated against him and terminated his employment because of his age and race

---

[1]  Plaintiff argues that this Court may not consider the "unauthenticated" documents which Defendant has submitted from Plaintiff's state cause of action against Defendants and from the EEOC. The Court of Appeals for the Third Circuit, however, has recognized that "To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.,181 F.3d 410, 426 (3d Cir. 1999); see also Rogan v. Giant Eagle, Inc., 113 F.Supp.2d 777, 782 (W.D.Pa.2000) ("It is clear to us that under the legal applicable standard we may consider the EEOC charge and related EEOC documents, including the letter from the EEOC summarizing its investigation, the right to sue letter, and the intake questionnaire, either as undisputed documents referenced in the complaint or central to the plaintiff's claim, or as information which is a matter of public record, without converting this motion to one for summary judgment.")

The case which Plaintiff cites, Cooper v.Picket, 137 F.3d 616 (9th Cir. 1997), in support of his position is inapposite.  In Cooper, the Court held that it could not consider certain corporate documents–including  transcripts of conference calls, declarations, and a faxed copy of internal projections–that the defendant submitted in support of its motion to dismiss.  Id. at 622.  The Defendant in that case argued that the documents should be admitted because they "show[ed] that the complaint's allegations . . . were 'outright falsehoods.'" Id. at 622.

In contrast to the defendant in Cooper, the Defendants in the present case have referenced public records of a prior lawsuit, not internal corporate documents.  It is permissible for the Court to "take judicial notice of another court's opinion-not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." Southern Cross, 181 F.3d at 426.  Accordingly, this Court may consider the records of the prior action submitted by Defendants.

and in retaliation for complaining that he was being discriminated against. (Compl. ¶¶ 74-137). He further alleges that the Defendants are liable for their actions in relation to his employment at II-VI under Pennsylvania common law. (Compl. ¶¶ 138-59).

This is the third legal action Plaintiff has initiated that arises out of his employment with Defendant II-VI. On May 17, 2005, Plaintiff filed a Praecipe for Writ of Summons against Defendants in the Butler County Court of Common Pleas. (Ex. B to Def. Brief). It does not appear, however, that plaintiff has pursued that action. On June 16, 2005 Plaintiff filed a civil action in the Court of Common Pleas of Allegheny County against the same Defendants named in the present action. (Ex. C to Def. Brief). The Fifth Amended Complaint, filed on January 19, 2006, in that case included eight counts against defendants: intentional infliction of emotional distress, negligently conducted and maintained performance appraisal, negligent supervision, failure to comply with duty to investigate, intentional interference with prospective employment relationship, negligent retention, negligent training, and negligent failure to provide a safe work environment. Id.

Defendants filed preliminary objections to that Fifth Amended Complaint on February 6, 2006. (Ex. D to Def. Brief). In those objections, Defendants argued that Plaintiff's claims should be dismissed because (1) some of Plaintiff's claims were not pled with sufficient factual specificity, (2) all of Plaintiff's claims were legally insufficient, and (3) Plaintiff had prior legal action pending on the same claims. Id. The Defendants' preliminary objections identified two pending proceedings that it argued should bar Plaintiff's claims:

> 1. The Plaintiff commenced a civil action against these same defendants in the Court of Common Pleas of Butler County Pennsylvania at 2005-10546, which action is still pending in said court. . . .

3

> 2.  The Plaintiff filed a charge of discrimination against Defendant II-VI before the Equal Employment Opportunity Commission at Docket No. 172-2004-01603, which action was recently dismissed by said Commission, with advice to the Plaintiff that he was given leave to file a civil action to redress any alleged harm to him, and in which action he is permitted to raise the same allegations as are raised in this suit.

Id. at 13.

On March 9, 2006, after hearing oral argument, Judge Judith Friedman sustained defendants' preliminary objections and dismissed the action.  (Ex. E to Def. Brief)  The entire text of the order dismissing the action was as follows:

> "AND NOW, this 9th day of March, 2006, after consideration of the Preliminary Objections and Brief in Support Thereof heretofore filed by the Defendants, and after review of Plaintiff's response and following oral argument, the Plaintiff's Fifth Amended Complaint is hereby dismissed in its entirety."

Id.  The record does not reflect the specific reasoning behind the dismissal.  On April 10, 2006, Plaintiff filed a Notice of Appeal in the matter to the Superior Court of Pennsylvania.  (Ex. F to Defendant's Brief in Support of Motion to Dismiss).  The Superior Court dismissed that appeal on October 4, 2006, because Plaintiff failed to file a brief.  (Ex. A to Defendant's Reply Brief in Support of Motion to Dismiss).

Before initiating his actions in the Pennsylvania state courts, Plaintiff had filed a charge of discrimination against Defendants with the EEOC.  (Ex. A to Defendant's Brief in Support of Motion to Dismiss).  On January 31, 2006, the EEOC issued a right to sue letter to Plaintiff with respect to that charge.  (Ex. G to Defendant's Brief in Support of Motion to Dismiss)  On April 28, 2006, Plaintiff commenced the instant action in this Court.  The Complaint cites sixteen counts against defendants.  Plaintiff alleges that Defendants: violated Title VII of the Civil Rights Act, 42 U.S.C. §2000e (counts 1 and 2); violated the Pennsylvania Human Rights Act, 43 P.S. § 951 et

4

seq. (counts 3 and 4); violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §

621 et seq. (counts 5 and 6); violated the Civil Rights Act of 1866, 42 U.S.C. § 1981 (counts 7 and

8); violated the Civil Rights Act of 1871, 42 U.S.C. § 1985(3) (counts 9 and 10); tortiously

interfered with a contractual relationship (count 11); breached the employment contract with

defendant (count 12); breached their fiduciary duty, duty of loyalty, and duty of good faith and fair

dealing with respect to Plaintiff (count 13); made fraudulent misrepresentations to Plaintiff (count

14); engaged in a civil conspiracy to commit the above alleged actions (count 15); and

intentionally inflicted emotional distress on Plaintiff (count 16).  Between August 15th and 17th,

2006, Defendants were served with the complaint (and possibly a summons) by United States

Mail.  (Doc. Nos. 9, 10, 11, and 12).  On August 28, 2006, Defendants filed a Motion for

Extension of Time to File a Responsive Pleading (Doc. No. 4), arguing that Plaintiff had failed to

serve defendants with a summons or with a waiver of service.  Plaintiff filed returns of service

with the Court on September 13, 2006.  (Doc. Nos. 9, 10, 11, and 12).

On September 11, 2006 defendants filed a Motion to Dismiss Plaintiff's complaint

pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6) with a supporting

brief.  (Doc. Nos. 7 and 8).  In their brief, Defendants argued that Plaintiff's complaint should be

dismissed because (1) Plaintiff failed to properly serve Defendants, (2) Plaintiff's Title VII and

ADEA claims were time-barred, (3) the individual defendants were not liable under Title VII and

the ADEA, (4) some of Plaintiff's claims were barred by res judicata and collateral estoppel, (5)

Plaintiff failed to exhaust his administrative remedies for his ADEA and Title VII retaliation

claims, (6) Plaintiff failed to state a claim with respect to his § 1981 and § 1985 claims and all of

his state law claims, and (7) Plaintiff failed to allege a contract with respect to his § 1981 claims.

On October 17, 2006, Plaintiff filed a Motion for Rule 11 Sanctions (Doc. No. 16), alleging that Defendants' Motion to Dismiss and their Motion for Extension of Time to File a Responsive Pleading contained "incomplete and/or false and reckless allegations of facts," including that Plaintiff had not served Defendants with summonses.  On October 23, 2006, Defendants withdrew their motion to dismiss with respect rules 12(b)(2) and 12(b)(5).  (Doc. No. 21).

## STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all well pleaded allegations of fact.  Pennsylvania Nurses Ass'n. v. Pennsylvania State Educ. Ass'n, 90 F.3d 797, 799-800 (3d Cir.1996). In addition, the Court must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-movant. General Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 325 (3d Cir. 2001). Dismissal is appropriate only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see also Lorenz v. CSX Corp., 1 F.3d 1406, 1411 (3d Cir.1993).

## ARGUMENT

A.     Res judicata effect of State Court Dismissal (Counts 7, 8, 9, 10, 11, 12, 13, 14, and 15)

Defendants argue that the doctrine of res judicata bars all of Plaintiff's claims that he could have brought in his state court action in the Court of Common Pleas.  The doctrine of res judicata,

or claim preclusion, "prohibits litigants from pursuing a matter that has not previously been litigated but which should have been advanced in an earlier suit." General Elec. Co. v. Deutz AG, 270 F.3d 144, 158 n.5 (3d Cir. 2001) (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n. 1 (1984)).

Under 28 U.S.C. § 1738, the rulings of state courts "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such state ... from which they are taken." Thus, this Court must give the same preclusive effect to a judgment of a Court of Common Pleas of Pennsylvania as Pennsylvania courts would give that judgment. Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 548 (3d Cir. 2006).

In Pennsylvania, res judicata bars parties "from litigating claims that were or could have been raised in the prior action which resulted in a final judgment on the merits, so long as the claims derive from the same cause of action." Balent v. City of Wilkes-Barre, 669 A.2d 309, 315 (Pa. 1995) (citing Allen v. McCurry, 449 U.S. 90, 94 (1980)). Res judicata does not, however, preclude a litigant from bringing in a second action a claim that he could not have raised in the first action. See McCarter v. Mitcham, 883 F.2d 196, 199 (3d Cir.1989) (finding that prior Pennsylvania civil rights suit did not bar a Title VII action because Title VII claims cannot be brought in state court).

Two suits are sufficiently similar for res judicata purposes when the two actions share the following four characteristics: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued. Turner, 449 F.3d 542, 548 (citing Bearoff v. Bearoff Bros., Inc., 458 Pa. 494, 327 A.2d 72, 74 (1974)); McGill

7

v. Southwark Realty Co., 828 A.2d 430, 435 (Pa. Cmwlth. Ct. 2003) (citing Myers v. Workers

Comp. Appeal Bd. (Univ. of Pennsylvania), 782 A.2d 1108 (Pa. Cmwlth. Ct. 2001).

It is not clear whether the dismissal by the Court of Common Pleas of Plaintiff's state court

action was a "final judgment on the merits" because it is not clear from the record the basis upon

which the state trial court dismissed Plaintiff's claim(s).  Thus, res judicata cannot apply in this

case.  The Pennsylvania Supreme Court has recognized that the "sustaining of preliminary

objections in the nature of a demurrer . . . is a final appealable order."  United State National Bank

in Johnstown v. Johnson, 487 A.2d 809, 813 (Pa. 1985) (internal citations omitted).  Further, such

an order, "becomes res judicata if not appealed within the prescribed appeal period."  Id.  Thus, if

the Court of Common Pleas had clearly dismissed Plaintiff's claims on the basis of a demurrer, the

order would be res judicata with respect to any further claims by plaintiff that could have been

brought in the state court proceeding.  See, e.g., J. A. & W. A. Hess, Inc. v. Hazle Tp., 350 A.2d

858, 861 (Pa. 1976) (noting that "[a]n order granting a demurrer says, in effect, that the plaintiff is

not entitled to proceed to trial because he has not stated a cause of action, it puts the plaintiff out of

court as to a particular defendant").

In this case, however, the order which dismissed Plaintiff's claim(s) did not specifically

indicate that the court dismissed Plaintiff's claim(s) on the basis of a demurrer and Defendant's

had also argued in their preliminary objections that the Plaintiff's complaint should be dismissed

in its entirety because of the pendency of other actions.[2]  Specifically, Defendants argued in their

---

[2]  Defendants also argued that Plaintiff's claim should be dismissed for failure to plead
certain claims with factual specificity.  As Defendants only raised this argument with respect to
some of Plaintiff's claims, however, this could not have served as the basis for dismissing the
entire complaint.

8

preliminary objections that because Plaintiff had commenced an action in Butler County and because the EEOC had just dismissed Plaintiff's complaint and given him leave to file a civil action "in which action he is permitted to raise the same allegations as are raised in this suit." (Defendant's Preliminary Objection, Ex. D of Def. Brief at 12-13).

Because it is not clear from the order why the court dismissed Plaintiff's state court action, it has become necessary to consider whether a dismissal on the basis of a pendency of another action would also constitute a "final judgment on the merits." In Pennsylvania, a judgment dismissing an action will not necessarily bar a later suit. Wade v. City of Pittsburgh, 765 F.2d 405, 409 (3d Cir. 1985) (citing Restatement of Judgment 2d § 20) (applying Pennsylvania law). In Pennsylvania courts, the "essential inquiry" in determining whether res judicata applies "is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights."Callery v. Municipal Authority, 243 A.2d 385, 387 (Pa. 1968). In addition, "A former judgment is not conclusive of anything which was not directly decided by it or was not material to the decision. Before such effect can be given to it in another suit, it should appear ... that [the earlier decision] rested on the precise questions which it is sought again to agitate." Wade, 765 F.2d at 409 (quoting Haefele v. Davis, 160 A.2d 711, 713 (Pa. 1960)). Thus, a dismissal based on the expiration of a statute of limitations in one forum may not necessarily bar a suit on the same cause of action in another jurisdiction. See Wade, 765 F.2d at 409 (citing Hartmann v. Time, Inc., 166 F.2d 127, 138 (3d Cir.1948)).

The opinion of the Superior Court of Pennsylvania in <u>Consolidation Coal Co. v. District 5,</u> <u>United Mine Workers of America</u>, 485 A.2d 1118 (Pa. Super. Ct. 1984) is instructive on this point. The court held that a preliminary injunction, which is only a temporary remedy granted in contemplation of the time when the parties' dispute may be resolved, is not a final judgment on the merits. <u>Id.</u> at 1122. The court recognized that while there a strong public policy in Pennsylvania against splitting a cause of action, the rationale that underlies this policy is that "it is seen as inappropriate to drag a party through the litigation process twice." <u>Id.</u> at 1122-23. <u>See also</u>, <u>Clark</u> <u>v. Troutman</u>, 502 A.2d 137, 139 (Pa. 1985) (noting that "[t]he purposes of the rule are the protection of litigants from the dual burden of relitigating an issue with the same party or his privy and the promotion of judicial economy through prevention of needless litigation"); <u>In re Estate of</u> <u>Tower</u>, 343 A.2d 671, 674 (Pa. 1975) (observing that "[t]he rationale of the doctrine of res judicata is to bring an end to vexatious and repetitious litigation"). Thus, where "the first action is never fully litigated, a party is not subjected to the inconvenience of having to re-litigate." <u>Id.</u> at 1123.

Based on these principles, if the Court of Common Pleas had dismissed Plaintiff's complaint on the basis of the pendency of a prior action, it would not necessarily constitute a final judgment on the merits. Like a preliminary injunction, a dismissal on the basis of the pendency of a prior action contemplates the final resolution of the claim at some later time, albeit in a different forum. The Defendant will not necessarily be "dragged through the litigation process twice." The Defendants' preliminary objections identified two pending proceedings, the suit initiated in the Butler County Court of Common Pleas and the possibility of a federal civil action based on the claims raised in the EEOC charge. In fact, in its preliminary objections, the Defendants stated that were Plaintiff to bring a civil suit on the basis of the allegations in the EEOC charge he would be

"permitted to raise the same allegations as are raised in this suit."  Though it may be unlikely that

the Court of Common Pleas dismissed Plaintiff's action on the basis of a not yet filed federal civil

action, viewing the evidence of record in the light most favorable to the Plaintiff, it is possible that

it did so.

      The equitable concerns underlying res judicata do not support dismissing Plaintiff's claims

in this case.  It is not clear from the dismissal order why Plaintiff's state claims were dismissed and

one of the bases upon which the Defendants moved to have Plaintiff's case dismissed was the

possibility of the pendency of the very proceeding that Plaintiff is now pursuing in this Court.

There may be circumstances in which a dismissal on the basis of a prior pending proceeding would

justify invoking res judicata (e.g., if a plaintiff simultaneously initiated suits in all of the counties

of Pennsylvania with the purpose of harassing a defendant), but this is not one of them.

      Because it is not clear from the record whether the Court of Common Pleas' dismissal of

Plaintiff's state claims constituted a "final judgment on the merits" the requirements of res judicata

are not satisfied at this stage of the litigation.


B.    <u>Collateral Estoppel Effect of State Court Dismissal of Intentional Infliction of Emotional</u>
      <u>Distress Claim (Count 16)</u>
      Defendants argue that count 16, intentional infliction of emotional distress, should be

dismissed under the doctrine of collateral estoppel.  The doctrine of "collateral estoppel," or "issue

preclusion," prevents a party from relitigating an issue that was actually decided in a prior

proceeding.  <u>Commonwealth v. Holder</u>, 805 A.2d 499, 502 - 503 (Pa. 2002).  In Pennsylvania, a

party may not litigate an issue if 1) an issue decided in a prior adjudication is "identical" to the

issue raised in the later action; 2) there was a final judgment on the merits; 3) the party against

whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication, 4) the party against whom it is asserted had a full and fair opportunity to litigate the issue in question in a prior action, and 5) the determination in the prior proceeding was essential to the judgment. R.W. v. Manzek, 888 A.2d 740, 748 (Pa. 2005) (citing Folino v. Young, 568 A.2d 171, 174 (Pa. 1990).

As discussed above, it is not clear from the record whether there was a final judgment on the merits of the issue in this case. Accordingly, collateral estoppel does not bar Plaintiff from litigating count 16 of his complaint, intentional infliction of emotional distress.

C.    Plaintiff's Title VII and ADEA claims

Defendants argue that Plaintiff's ADEA claims and Title VII claims should be dismissed (1) with respect to incidents alleged to have occurred more than 300 days before Plaintiff filed his complaint with the EEOC because they are time-barred, (2) with respect to Defendants Bruce Glick, Csaba Seles, and Kerry Courtney because the applicable statutes do not allow suits against individuals, and (3) with respect to Plaintiff's ADEA and Title VII retaliation claims because Plaintiff failed to exhaust his administrative remedies with respect to those claims. Defendants' contentions regarding timeliness and suits against the individual Defendants have merit, but their exhaustion argument does not.

1.    Timeliness of Plaintiff's EEOC Charge

Defendants argue that since Plaintiff's EEOC charge was filed on August 4, 2004, all incidents that occurred before October 2, 2003 should be dismissed as being time-barred. Specifically, defendants argue that the Court should dismiss claims based on the following

evidence as time-barred: (1) Plaintiff's age discrimination claim based on an "older" employee being hired in the same position as him in 2001 (Compl. ¶ 39); (2) Plaintiff's claim that Defendants, beginning in late 2001, discredited his work in several "staged" incidents (Compl. ¶ 41); (3) Plaintiff's claim that the Defendants discriminated against him when he was issued the poor performance appraisal on June 11, 2003 (Compl. ¶ 47-48); (4) actions by Defendants that occurred in June 2003 in retaliation for Plaintiff filing a rebuttal to the poor performance review (Compl. ¶ 52); and (5) deprivations, including wage increases, access to grievance procedures, and training, that resulted from Plaintiff's poor performance review (Compl. ¶ 66). For the following reasons, the Court will dismiss Plaintiff's claims under the ADEA and Title VII that arise out of incidents that occurred prior to 300 days before Plaintiff's EEOC filing.

"[T]he ordinary time for filing a charge employment discrimination with the EEOC is 300 days after the alleged discrimination when the charge is filed ... with the appropriate state agency." Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 480 (3d Cir.1997) (citing 42 U.S.C. § 2000e-5(e)(1)). Plaintiff filed a complaint with the EEOC on August 2, 2004. Therefore, any claim for conduct which occurred prior October 2, 2003 would ordinarily be barred.

The 300 day requirement is, however, "a requirement that, like a statute of limitation, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). Under one such equitable exception, the continuing violations theory, a plaintiff may pursue a claim for discriminatory conduct that began more than 300 days before the filing of an EEOC complaint "if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995) (citing Bronze Shields, Inc. v. New Jersey Dept. of Civ. Serv., 667 F.2d 1074, 1081 (3d Cir.

1981)).  The purpose of the continuing violations theory is to allow a plaintiff to proceed with an action where "'it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of events that occurred later, within the period of the statute of limitations.'"  Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 482 (3d Cir. 1997) (quoting Galloway v. General Motors Serv. Parts Operations, 78 F.3d 1164, 1166 (7th Cir.1996)).

Thus, discrete, individually actionable actions "cannot be aggregated under a continuing violations theory," O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (citing National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002)), and "are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  Morgan, 536 U.S. at 113.  The Third Circuit has identified the following "non-exhaustive" list of discrete acts: "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, wrongful accusation."  O'Connor, 440 F.3d at 127.

Plaintiff's allegations do not meet the continuing violations exception to the usual 300-day filing requirement for ADEA and Title VII claims.  Plaintiff has alleged a series of discrete acts like those identified by the Third Circuit in O'Connor, each of which should have put him on notice that he had a claim for alleged discrimination.  Accordingly all of Plaintiff's claims based on actions prior to October 3, 2003 will be dismissed.

        2.    Suits against individual defendants

The Individual Defendants seek the dismissal of claims brought against them in their individual capacities under the ADEA and Title VII, urging that individual liability is unavailable

under those statutes.  These claims will be dismissed. The Third Circuit has recognized that

individual employees are not liable under Title VII. See Sheridan v. E.I. DuPont de Nemours and

Co., 100 F.3d 1061 (3d Cir.1996).  While the Third Circuit has not yet expressed its view on

whether individual liability is available under the ADEA, district courts in this circuit have

unanimously concluded, as have the majority of Courts of Appeals which have considered the

question, that the ADEA does not provide for individual liability. See, e.g.,  Stults v. Conoco, 76

F.3d 651, 655 (5th Cir.1996); Smith v. Lomax, 45 F.3d 402, 403 n. 4 (11th Cir.1995); Birkbeck v.

Marvel Lighting Cop., 30 F.3d 507 (4th Cir.1994); Miller v. Maxwell's International Inc., 991 F.2d

583 (9th Cir.1993); Horvath v. Rimtec Corp., 102 F.Supp.2d 219, 227-28 (D. N. J. 2000);

Kennedy v. Chubb Group of Insurance Companies, 60 F.Supp.2d 384, 390 (D. N. J.1999); Kohn v.

AT & T Corp., 58 F.Supp.2d 393 (D. N. J.1999); DeJoy v. Comcast Cable Communication Inc.,

941 F.Supp. 468, 474 (D. N. J.1996); Marion v. City of Philadelphia Water Department, 161

F.Supp.2d 381 (E. D. Pa.2001); Cohn v. Temple Physicians, 11 F.Supp.2d 733, 736 (E. D.

Pa.1998); Violanti v. Emery Worldwide, 847 F.Supp. 1251 (M.D.Pa.1994).

     The ADEA makes it unlawful for an "employer" to discriminate on the basis of age against

its employees. 29 U.S.C. § 623(a). The Act defines "employer" as "a person engaged in an

industry affecting commerce who has twenty or more employees for each working day in each of

twenty or more calendar weeks in the current or preceding calendar year ... [and] any agent of such

a person...." 29 U.S.C. § 630(b).  Title VII likewise defines the term "employer" to mean "a person

engaged in an industry affecting commerce who has fifteen or more employees for each working

day in each of twenty or more calendar weeks in the current or preceding calendar year, and any

agent of such a person . . . ." 42 U.S.C.A. § 2000e(b).  These statutory frameworks are very

similar. Both laws limit liability to employers that employ a particular number of employees, and both include "agent" within the definition of "employer." Compare 42 U.S.C. § 2000e(b), *with* 29 U.S.C. §§ 630(b) & 203(d).  The Third Circuit has clearly held that employees may not be held individually liable under Title VII.  As Title VII's statutory framework is virtually identical to that of the ADEA it seems clear that the ADEA also prohibits personal capacity suits against individuals.

      3.    Exhaustion of administrative remedies

The formal charge Plaintiff filed with the EEOC referenced discrimination on the basis of both "race" and "age," but not "retaliation." Defendants argue that because Plaintiff did not specifically indicate[3] that he was alleging discrimination on the basis of retaliation, he failed to exhaust his administrative remedies with respect his retaliation claims under the ADEA and Title VII.

To sustain claims under the ADEA and Title VII a plaintiff must file a timely charge of the alleged discriminatory action with the EEOC.  42 U.S.C. §§ 2000(e)-5(b), (e) and (f); 29 U.S.C. § 626(d); McDonnell Douglass Corp. v. Green, 411 U.S. 792, 798 (1973); Whalen v. W.R. Grace & Co., 56 F.3d 504, 506 (3d Cir. 1995); Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir.1976).  A plaintiff may proceed with a claim if "the acts alleged in the subsequent [complaint] . . . are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984); see also Ostapowicz v. Johnson

---

[3]  The EEOC charge form provides a list of different bases for discrimination and asks an individual to check which types of discrimination are being alleged.  On his EEOC charge, Plaintiff checked both "race" and "age," but did not check "retaliation," which was on the list.

Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976) (noting that "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination" (internal citations omitted)).  Thus, "a district court may assume jurisdiction over additional charges if they are reasonably within the scope of the complainant's original charges and if a reasonable investigation by the EEOC would have encompassed the new claims." Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir.1984).

The Third Circuit has instructed that the scope of an EEOC charge is to be liberally construed.  See Hicks v. ABT Assoc. Inc., 572 F.2d 960, 965 (3d. Cir.1978) ("Charges are most often drafted by one who is not well versed in the art of legal description.... The scope of the original charge should be liberally construed.").  Accordingly, that Court has permitted retaliation claims under Title VII to be made in court even though a plaintiff only alleges discrimination in the charge made to the EEOC. See Howze, 750 F.2d at 1212.

In Howze, the plaintiff had alleged in her EEOC charge she had been denied a promotion due to racial discrimination.  The plaintiff's amended complaint raised an additional theory about why she had been denied a promotion because of her race–she alleged that she had been discriminated against in retaliation for her activities on behalf of the J&L Black Caucus.  Id.  This Court held that the Plaintiff could amend her complaint to include a charge of retaliation, even thought the EEOC charge did not specifically include a charge of retaliation.  Id.  The Court reasoned that the plaintiff's retaliation claim was fairly within the scope of the discrimination charge.  Id.  The Court said that the plaintiff's "new retaliation claim 'may fairly be considered [an] explanation[ ] of the original charge ....'" Id. (citing Ostapowicz, 541 F.2d at 399).

17

Likewise, in the present case Plaintiff alleged in his EEOC charge that Defendants, *inter alia*, gave him a poor performance review and eventually fired him because of his race and age. In his complaint he alleges that the Defendants took these alleged discriminatory actions in retaliation for Plaintiff complaining that he was being discriminated against.  As in Howze, the retaliation allegations in Plaintiff's complaint can reasonably be viewed as an explanation of the allegations in Plaintiff's EEOC charge.

D.    Plaintiff's § 1981 Claim

Defendants argue that plaintiff has failed to state a claim under 42 U.S.C. § 1981 because he has failed to allege that he had a contract with defendants.  § 1981 grants to all persons within the United States "the same right...to make and enforce contracts...as is enjoyed by white citizens...."  To establish a right to relief under § 1981, Plaintiff must show (1) that he belongs to a racial minority; (2) that Defendants intended to discriminate against him on the basis of race; and (3) that the discrimination concerns one or more of the activities enumerated in § 1981, including the right to make and enforce contracts.  Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548, 569 (3d Cir. 2002) (citing Brown v. Philip Morris Inc., 250 F.3d 789. 797 (3d Cir. 2001)). The statute currently defines "make and enforce contracts" to "includ[e] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b).

The parties do not dispute that Plaintiff has stated a claim with respect to the first two prongs. Defendants argue, however, that because Plaintiff was an "at-will" employee, he had no "contract" with II-VI within the meaning of § 1981.  This argument must fail at the Motion to

18

Dismiss stage of the case.  First, terminating an at-will employee may give rise to a § 1981 action. In Pryor, the Third Circuit cited with approval the Fourth Circuit case Spriggs v. Diamond Auto Glass, 165 F.3d 1015 (4th Cir.1999), a case which noted "'an employer may act in perfect accord with its contractual rights-for example, when it terminates an at-will employee-but it may still violate § 1981 if that action is racially discriminatory and affects one of the contractual aspects listed in § 1981.'" Pryor, 288 F.3d at 570 (quoting Spriggs, 165 F.3d at 1020).  Further, each federal court of appeals that has explicitly decided the issue has held that an at-will employee may maintain a claim under § 1981 for racially discriminatory employment practices as has at least one district court in this circuit. See Skinner v. Maritz, Inc., 253 F.3d 337, 340 (8th Cir. 2001); Lauture v. Int'l Bus. Machs. Corp., 216 F.3d 258, 261-62 (2d Cir. 2000); Perry v. Woodward, 199 F.3d 1126, 1133 (10th Cir.1999); Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1018-19 (4th Cir.1999); Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc., 160 F.3d 1048, 1051-52 (5th Cir.1998); McClease v. R.R. Donnelley & Sons Co., 226 F.Supp.2d 695, 702 (E. D. Pa. 2002). But see Gonzalez v. Ingersoll Milling Mach. Co., 133 F.3d 1025, 1034-35 (7th Cir.1998) (expressing doubt that at-will employees may state § 1981 claims).  Defendants do not address any of this precedent and has failed to provide any persuasive authority or argument to convince this Court that an at-will employment relationship cannot give rise to a § 1981 claim.

Further, Plaintiff has alleged that Defendants interfered with his contractual rights in ways other than simply terminating his employment.  In his complaint, Plaintiff alleges that he had a contract (or contracts) with Defendant II-VI that entitled him to:

> (a).    Company's profit sharing plan and additional vesting of pension benefits as part of his plan for retirement.
>
> (b)    Wages.

19

     (c)     Knowledge that if he was to ever be considered for dismissal he would have been owed a 30-day written notice.

     (d)     Statutory stock options.

     (e)     Company wide bonus.

     (f)     Yearly merit wage increases.

     (g)     Health benefits as part of the company provided medical insurance.

     (h)     Paid vacations entitlements and enhancements to vest in less than a year.

     (I)     Life insurance.

     (j)     Short and long term disability.

(Compl. ¶ 65.)

Plaintiff alleges that Defendants interfered with his rights under this contract/these contracts because,

> 117. The discharge and the many other violations were intentional and solely due to Plaintiff's race in clear violations of Section 1981 as he was deprived from his rights to enforce his contractual rights as described above. Plaintiff's dismissal was the final of a series of continuing violations at least since 2001 by all the Defendants by which Plaintiff was intentionally discriminated upon solely because of his race by depriving him benefits, privileges, terms and conditions of his contractual relationship as described above. Similarly situated employees not in Plaintiff's protected class did not suffer the same adverse actions.

(Compl. ¶¶ 116-17.)  Although at this stage of the proceeding, Plaintiff has sufficiently alleged that Defendants violated numerous contractual provisions because of his race and this is enough to state a claim under §1981, it remains to be established through discovery whether an actual §1981 contractual relationship existed between the parties .

(k)     <u>Plaintiff's § 1985(3) claims (Counts 9 and 10)</u>

     Defendants allege that Plaintiff has not stated a claim under § 1985 because (1) he cannot "seek redress under § 1985 for Title VII violations" (Defendant's Brief in Support of Motion to Dismiss at 20); (2) he has not alleged a conspiracy; and (3) he has not alleged deprivation of a federal right. Plaintiff's claims will fail because he has failed to adequately allege a conspiracy.

In order to state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy of two or more persons; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any federal right.  Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

While Plaintiff has adequately alleged that Defendants violated Plaintiff's federal rights under § 1981, not Title VII,  Plaintiff's § 1985(3) claims will be dismissed because he has failed to adequately allege a conspiracy. While the Third Circuit has not conclusively decided the issue, at least one unpublished opinion of that Court has noted that mere generic and conclusory statements that defendants conspired to violate the federal rights of the plaintiff are not sufficient to state a valid section 1985(3) claim against them. See Parrott v. Abramsen, 200 Fed. Appx. 163, 165 (3d Cir. 2006) (noting that to state a claim under § 1985(3), a plaintiff  "must set forth facts from which a conspiratorial agreement between the defendants can be inferred").    Several district courts in this circuit have also recognized the same. See, e.g., Jones v. City of Scranton, Civ. No. 06-0738, 2006 WL 3242110 (M.D.Pa. Nov. 7, 2006) (section 1985(3) claim dismissed where complaint offered only conclusory allegations of concerted action); Pellegrino Food Prods. Co. v. City of Warren, 136 F.Supp.2d 391, 409-10 (W.D.Pa.2000) ("[C]onclusory allegations of concerted action without facts actually reflecting such action may be insufficient to state a conspiracy claim."); Sayles v. Commw. of Pa. Dep't of Pub. Welfare, 24 F.Supp.2d 393, 398-99 (M.D.Pa.1997) (no section 1985(3) claim where plaintiffs failed to provide any factual support of an agreement or communication of conspiracy and failed to bolster their "broad-ranging allegations of conspiracy" with anything more than "speculation and conjecture").

21

In <u>Parrott</u>, the Court held that the plaintiff had not set forth facts from which a conspiratorial agreement between the defendants could be inferred where the complaint alleged only that "'the defendants conspired together and with others'" to, *inter alia*, 'refuse to file' Parrott's notice of appeal.  <u>Parrott</u>, 200 Fed. Appx. at 164-65.  The defendants in that case were all employees of the Superior Court of the Virgin Islands.  <u>Id.</u> at 164-65.  Likewise, Plaintiff's complaint alleges only that "Defendant II-VI INCORPORATED, Bruce Glick, Csaba Szeles, and Defendants X, Y, and Z conspired at least since 2001 about dismissing plaintiff."  (Compl. ¶ 127).  Plaintiff has not alleged any facts from which one could infer that the defendants had in fact conspired.  Accordingly, Plaintiff's § 1985 claims fail and counts 9 and 10 of the complaint will be dismissed.

F.   <u>State Common Law Claims (Counts 11, 12, 13, 14, 15, and 16)</u>

Defendants argue that Plaintiff has failed to state a claim with respect to all of his Pennsylvania common law claims.  It is important to note that most of these claims are only subject to the liberal pleading standard of Federal Rule of Civil Procedure 8 which simply requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed. R. Civ. P. 8(a).  For the foregoing reason, this Court finds that Plaintiff has satisfied this pleading standard with respect to claims 11 through 14, but that he has not alleged facts that would entitle him to relief on counts 15 and 16.

1.   <u>Tortious Interference with a Contractual Relationship (Count 11)</u>

Defendants argue that Plaintiff's claim that the individual defendants tortiously interfered with his contractual relations with Defendant II-VI should be dismissed because an agent of an

22

employer acting within the scope of his employment has not, as a matter of law, interfered with plaintiff's contract with that employer.  Because Plaintiff has alleged that the individual Defendants were acting outside of the scope of their employment, this argument fails.

Pennsylvania has adopted the Restatement (Second) of Torts § 766 definition for tortious interference with contractual relations claims. Section 766 provides that "[o]ne who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." See Adler, Barish, Daniels, Levin and Creskoff v. Epstein, 393 A.2d 1175, 1183 (Pa.1978).  To state a claim for tortious interference with a contractual relation a plaintiff must show-"(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of the defendant's conduct." Crivelli v. General Motors Corp., 215 F.3d 386, 344 (3d Cir.2000).  A key element of this tort is that the contract must be between Plaintiff and a third party.

Under Pennsylvania law, "[t]he actions of a principal's agent are afforded a qualified privilege from liability for tortious interference with the principal's contract," so long as the agent is acting within the scope of its authority.  CGB Occupational Therapy, Inc. v. RHA Health Services Inc., 357 F.3d 375, 385 (3d Cir.2004). This is because "holding an agent liable would be like holding the principal itself liable for the tort of interfering with its own contract, instead of

23

holding the principal liable for breach of contract." <u>Id.</u>  Accordingly, agents may be liable where they act in their personal capacity or outside the scope of their authority.  <u>See</u> <u>American Trade Partners v. Int'l Importing Enters.</u>, 757 F. Supp. 545, 555 (E.D.Pa.1991) (holding that, where plaintiff alleged that defendants acted in their "personal capacities, without privilege," plaintiff had provided "an adequate pleading to establish personal liability").

Plaintiff has alleged that the individual Defendants were acting outside of the scope of their employment when they interfered with his contract with II-VI.  (Compl. ¶¶ 17-19.)  This is enough to meet the liberal pleading standards of Federal Rule of Civil Procedure 8.  <u>Cf.</u> <u>Daniel Adams Associates, Inc. v. Rimbach Pub., Inc.</u>, 519 A.2d 997, 1001 (Pa. Super. Ct. 1987) (dismissing claim for tortious interference where plaintiff alleged in the complaint that the employee who alleged interfered with the contract was "at all relevant times was the agent, servant, and/or employee of the defendant, . . . at all times acting within the course of his employment and scope of his authority, under and subject to the direct and exclusive control and supervision of the defendant.")

2.    <u>Breach of Contract (Count 12)</u>

Defendants argue that Plaintiff's breach of contract claim fails because he has failed to allege that there was a contract between Plaintiff and Defendant II-VI. A claim for breach of contract must plead the following required elements: (1) the existence of a contract to which the plaintiff and defendant were parties, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) damages.  <u>See</u> <u>Gorski v. Smith</u>, 812 A.2d 683, 692 (Pa. Super. Ct. 2002). Plaintiff has alleged several agreements between himself and II-VI which he claims were breached by II-VI, including a stock agreement and a non-compete agreement, and he has alleged that II-VI

violated the terms of the agreement(s) and that he is entitled to damages.  Defendants' arguments

that the agreements which Plaintiff cites were not binding contracts are factual issues that cannot

be resolved by this Court at this stage in the litigation.

3.    Breach of Fiduciary Duty, Duty of Loyalty, Breach of Duty of Good Faith and Fair
Dealing (Count 13)

Defendant argues that Plaintiff's breach of fiduciary duty claim should be dismissed

because Plaintiff has failed to show that he was in a fiduciary relationship with Defendants and

that his good faith and fair dealing claim should be dismissed because Plaintiff has failed to allege

a contract.  Plaintiff has, however, alleged that he was in a fiduciary relationship with Defendants

and, as discussed above, that he had several contracts with Defendant II-VI.  Plaintiffs allegations

in his complaint are more than sufficient to survive a motion to dismiss and Defendants' motion

will be denied with respect to count 13 of the complaint.

4.    Fraudulent Misrepresentation (Count 14)

Defendants argue that, instead of alleging fraudulent misrepresentation, Plaintiff has

merely alleged that "Defendants did not follows its [sic] own policies."  (Def. Brief at 27).  Under

Pennsylvania law, the elements of intentional misrepresentation are: 1) a representation; 2) which

is material to the transaction at hand; 3) made falsely, with knowledge of its falsity or recklessness

as to whether it is true or false; 4) with intent of misleading another into relying on it; 5)

justifiable reliance on the misrepresentation; and 6) resulting injury proximately caused by the

reliance.  Bortz v. Noon, 556 Pa. 489, 729 A.2d 555, 560 (Pa.1999).   Claims of fraud are subject

to the higher pleading standard of Federal Rule of Civil Procedure 9(b), which provides, "In all

averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with

25

particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

Plaintiff has alleged that Defendants intentionally and knowingly misrepresented certain policies, such as their "open door policy," and made certain promises, such as Defendant Glick's promise to meet with Plaintiff, which they knew they would not keep with the intent that Plaintiff would rely on those misrepresentations.  Plaintiff has also alleged that his reliance was justifiable and caused him injury.  Even under the higher pleading standard of Rule 9(b), these allegations, which identify the specific misrepresentations which Plaintiff contends are fraudulent, are sufficiently specific to survive a motion to dismiss.

### 5. Civil Conspiracy (Count 15)

Defendants argue that Plaintiff's civil conspiracy claim must fail because (1) a corporation cannot conspire with itself and Plaintiff does not allege that Defendants were acting outside of the scope of their duties and (2) Plaintiff fails to allege any overt act in furtherance of the conspiracy. To state a claim for civil conspiracy,  (1) the persons combined with a common purpose to do an unlawful act or to do a lawful act by unlawful means or unlawful purpose, (2) an overt act in furtherance of the common purpose has occurred, and (3) the plaintiff has incurred actual legal damage. Weaver v. Franklin County, ___ A.2d ___, 2007 WL 675337, *6 (Pa. Cmwlth. Ct. March 7, 2007) (citing Brown v. Blaine, 833 A.2d 1166, 1173 n.16 (Pa. Cmwlth. Ct. 2003)). A party that asserts a claim of civil conspiracy is required to aver "material facts which will either directly or inferentially establish elements of conspiracy." Id.

26

As noted above, Plaintiff has alleged that the individual Defendants were acting outside the scope of their employment, see Compl. ¶¶ 17-19.  Plaintiff's claim nonetheless fails because Plaintiff has not averred sufficient material facts that establish elements of the conspiracy. Viewing the allegations in the complaint in the light most favorable to the Plaintiff, he has sufficiently alleged certain overt acts, such as his termination, that could have been done in furtherance of an unlawful act, such as discriminating against Plaintiff.  He has failed, however, to offer facts that demonstrate that Defendants acted in concert or agreement.

Courts in Pennsylvania require that plaintiffs alleging civil conspiracy plead some fact, "such as meetings, conferences, telephone calls or joint signatures" on relevant forms, or "allege facts inferring conspiratorial conduct."  Petula v. Mellody, 588 A.2d 103, 107 (Pa. Cmwlth. Ct. 1991).  In Petula, the court held that the plaintiff had failed to state a civil conspiracy claim where, though he alleged parallel conduct between defendants, he did not allege any facts from which one could infer conspiratorial conduct.  Id.; see also, Landau v. Western Pennsylvania Nat. Bank, 282 A.2d 335, 339 (Pa. 1971).  By contrast, in Commonwealth ex rel. Pappert v. TAP Pharmaceutical Products, Inc., 885 A.2d 1127 (Pa. Cmwlth. Ct. 2005), the court found the Plaintiff had alleged sufficient facts from which a conspiracy could be inferred where, even though he did not provide specific dates and times, he alleged that the Defendants had participated in various meeting and phone calls during which they conspired.  Id. at 1141.

Like the plaintiff in Petula, Plaintiff has not alleged any fact(s) from which a conspiracy could be inferred and thus count 15 of the Plaintiff's complaint will be dismissed.

27

6.      Intentional Infliction of Emotional Distress (Count 16)

Defendant argues that plaintiff has not stated a claim of intentional infliction of emotional distress because he has not identified any "outrageous" conduct by Defendants that would entitle him to relief. To make out a claim of intentional infliction of emotional distress, a plaintiff must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be intolerable in a civilized community." Thompson v. AT & T Corp., 371 F.Supp.2d 661, 683 (W. D. Pa.2005) (quoting Jacques v. AKZO Int'l Salt, Inc., 619 A.2d 748, 754 (1993) (abrogated on other grounds as recognized in Kroptavich v. Pennsylvania Power and Light Co., 795 A.2d 1048, 1055 (Pa. Super. Ct. 2002)).  Plaintiff alleges that Defendants committed such actions as (1) discriminating against him on the basis of race and age, (2) staging poor reviews of his work, (3) causing him anxiety by refusing to meet with him, (4) telling all other employees when Plaintiff would be dismissed, (5) having Plaintiff escorted from the building, (6) not inviting Plaintiff to weekly meetings.  None of this conduct, nor anything else mentioned in Plaintiff's complaint, rises to the level of being so "outrageous" as to serve as the basis of an intentional infliction of emotional distress claim.  Accordingly count 16 of the complaint will be dismissed.


G.      Motion for Sanctions

Plaintiff argues that this Court should sanction Defendants because their motions for extension of time and to dismiss contained "false and reckless allegations."  (Plaintiff's Brief in Support of Motion for Rule 11 Sanctions at 2).  At the heart of this complaint is Plaintiff's

28

allegation that Defendants intentionally misled the Court by claiming that Defendants had not been served with a copy of a summons along with the complaint.  Plaintiff also alleges that Defendant made certain misrepresentations about the contents of Plaintiff's complaint, such as alleging that Plaintiff had not claimed that Defendants acted outside the scope of their employment, when he had.

Under Rule 11(b) of the Federal Rules of Civil Procedure, by submitting a document to a federal court, an individual certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the allegations and other factual contentions have evidentiary support . . . ."  Fed. R. Civ. 11(b). Rule 11 places a duty on the signer of the document to "conduct an appropriate inquiry into the facts that is reasonable under the circumstances.'" Zuk v. Eastern Pennsylvania Psychiatric Institute of the Med. Coll. Of Pennsylvania, 103 F.3d 294, 299 (3d Cir. 1996) (quoting Rule 11 Advisory Committee Notes).

"To comply with this standard, counsel 'must conduct a reasonable investigation of the facts and a normally competent level of legal research to support the presentation.'" Simmerman v. Corino, 27 F.3d 58, 62 (3d Cir.1994) (quoting Mary Ann Pensiero, Inc. v Lingle, 847 F.2d 90, 94 (3d Cir. 1988).  The Third Circuit has instructed that "[w]hen a district court examines the sufficiency of the investigation of facts and law, it 'is expected to avoid the wisdom of hindsight and should test the signer's conduct by [asking] what was reasonable to believe at the time the pleading, motion, or other paper was submitted.'" Bradgate Assocs., Inc. v. Fellow, Read & Assocs., Inc., 999 F.2d 745, 752 (3d Cir. 1993) (quoting CTC Imps. and Exps. v. Nigerian Petroleum Corp., 951 F.2d 573, 578 (3d Cir. 1991)).  In determining whether a party's actions were reasonable under the circumstances, the court should consider "'such factors as how much

time for investigation was available to the signer; whether he had to rely on a client for

information as to the facts underlying the pleading, motion, or other paper . . . .'" CTC Imports,

951 F.2d at 578 (quoting Advisory Committee Notes on Rule 11).

When Defendants submitted their motions for extension of time and to dismiss, returns of

service had not yet been filed with this Court.  Defendant Kerry Courtney has submitted an

affidavit stating that she received only a copy of the Complaint and no summons.  It was

reasonable for defense counsel to rely on the representations of the defendant and the information

contained on the electronic docket.  Plaintiff did submit returns of service stating that Defendants

had been served with a summons and a copy of the complaint after Defendants had submitted

their motions to extend time to file and to dismiss. This does not, however, change what was

reasonable for Defendants and defense counsel to believe at the time those motions and briefs in

support thereof were submitted.  Further, Defendant Courtney still contends that she did not

receive a summons.  All of the other "reckless allegations" Plaintiff has identified are reasonable

interpretations of facts from the record.  Plaintiff has not demonstrated any prejudice to himself by

any of Defendants alleged errors.

Accordingly, the motion for Rule 11 Sanctions will be denied.


**CONCLUSION**

For the aforementioned reasons, Defendant's motion to dismiss will be **GRANTED** (1) on

counts 9, 10, 15, and 16 of the complaint with respect to all defendants, (2) on counts 1, 2, 5, and

6 with respect to all discriminatory conduct alleged to have occurred before October 2, 2003, or

300 days before the administrative charge was filed, and (3) on counts 1, 2, 5, and 6 with respect

the individual defendants.  The motion to dismiss will be **DENIED** in all other respects.

Plaintiff's motion for Rule 11 sanctions will be **DENIED**.


       An appropriate Order follows.

                                  McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AMBROSIO ROUSE, Ph.D.,** | ) |
| Plaintiff**,** | ) |
| | ) |
| **v.** | ) |
| | )   2:06-cv-566 |
| **II-VI, INCORPORATED, BRUCE** | ) |
| **GLICK, individually, CSABA SZELES,** | ) |
| **individually, KERRY COURTNEY,** | ) |
| **individually, X, Y, and Z, individually,** | ) |
| Defendants. | ) |

<u>ORDER</u>

_____AND NOW, this 30th day of March, 2007, in accordance with the foregoing

Memorandum Opinion it is hereby ORDERED, ADJUDGED and DECREED that Plaintiff's

Motion for Rule 11 sanctions is **DENIED** and that Defendants' Motion to Dismiss the complaint

is:

1.   **GRANTED** with respect to all Defendants on counts 9, 10, 15, and 16;

2.   **GRANTED** as to counts 1, 2, 5, and 6 with respect to all discriminatory conduct

     alleged to have occurred before October 2, 2003, which is 300 days before the

     administrative charge was filed;

3.   **GRANTED** with respect the individual defendants on counts 1, 2, 5, and 6; and

4.   **DENIED** with respect to all other counts.

Defendants shall file an answer to the remaining counts of the Complaint on or before

**April 13, 2007**.

BY THE COURT

s/ Terrence F. McVerry

_____United States District Court Judge

cc:     Ambrosio Rouse, Ph.D.
        2770 St. Andrews Square
        Apt #2117
        Allison Park, PA

        Samuel J. Pasquarelli, Esquire
        Sherrard, German and Kelly


        Email: sjp@sgkpc.com
        Jennifer R. Andrade, Esquire
        Sherrard, German and Kelly
        Email: jandrade@sgkpc.com